UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WANDA VERRET,                          :

        Plaintiff,                 :

        vs.                        :            No. 3:14cv00234 (WIG)

CAROLYN W. COLVIN,                     :
Acting Commissioner of Social
Security Administration,               :

        Defendant.                 :
-----------------------------------------------------X

RECOMMENDED RULING ON PENDING MOTIONS

Plaintiff Wanda Verret brings this action under 42 U.S.C. § 405(g) seeking review of the

final decision of the Social Security Commissioner denying her application for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act.  Plaintiff now moves this

Court to reverse the decision of the Commissioner and to remand this action to the Social

Security Administration for a determination of benefits.  [Doc. # 17].  In response, Defendant has

moved for an order affirming the Commissioner's decision.  [Doc. #18].  For the reasons that

follow, the Court recommends that the decision of the Commissioner should be affirmed.

<u>Background</u>

Plaintiff was born in 1980.  She is single and has three children.  (R. 40).  She completed

up through the eighth grade in school.  (R. 41).  Plaintiff has past experience doing temp work

and working as a waitress.  (R. 41-42).  She has not worked since 2004.  (R. 41).

On May 13, 2011, Plaintiff filed her application for SSI, alleging disability beginning on

June 1, 2008.  (R. 24).  Her claim was denied initially and upon reconsideration.  A hearing was

then held before Administrative Law Judge Ronald Thomas (the "ALJ") on September 4, 2012,

at which Plaintiff, who was represented by counsel, testified.  (R. 38-53).  Plaintiff was 32 years of age at the time of the hearing.  (R. 40).

Plaintiff testified that her disability stems from mental issues, including hallucinations and difficulty interacting with others.  (R. 42).  She was taking Lithium, Celexa, and Seroquel at that time.  (*Id.*).  Plaintiff testified she would have hallucinations of things like a big owl, and that she suffered from depression.  (R. 43-44).  She stated that she was often suspended from school as a child, and only completed through the eighth grade.  (R. 44-45).  Plaintiff added she could only read and write "a little bit."  (R. 45).  At the time of the hearing, Plaintiff was attending a therapy program three times per week and meeting with a psychiatrist once per month.  (R. 45-46).

As to her daily activities, Plaintiff testified that she would mostly stay at home where she would watch television and sleep.  (R. 46-47).  She would leave the house to walk her son to and from school and to go to the store.  (R. 46).  Plaintiff states that she did not like to leave the house because she would have paranoid thoughts about the people she saw.  (R. 47).  Even with medication, she still felt nervous, anxious, and paranoid.  (R. 48).  Plaintiff testified that she would get depressed and sometimes stay in bed for three or four days at a time while depressed. (R. 50-51).  Plaintiff stated she was able to cook and clean, although sometimes her depression prevented her from performing these activities.  (R. 51-52).

On November 26, 2012, the ALJ issued his decision finding that Plaintiff had not been under a disability since the date of her application.  (R. 31).  The Appeals Council affirmed the ALJ's decision, thus rendering his decision the final decision of the Commissioner for appeals purposes.  This appeal ensued.

The ALJ's Decision

In rendering his decision, the ALJ followed the prescribed five-step sequential evaluation process.  20 C.F.R. § 416.920.  At step one, he determined that Plaintiff had not engaged in substantial gainful activity since May 13, 2011.  At step two, he found that Plaintiff had the following severe impairments: bipolar disorder, affective disorder, anxiety, and polysubstance disorder.[1]  At step three, the ALJ held that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") "to perform work at all exertional levels involving simple, routine repetitive work with one or two-step instructions; involving only occasional interaction with the public, co-workers and supervisors."  (R. 28).  At step four, the ALJ determined that Plaintiff had no past relevant work.  At step five, he determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  Based on these findings, the ALJ held that Plaintiff was not disabled.

Agency Documents

 Plaintiff completed an activities of daily living ("ADL") questionnaire on June 18, 2011.  (R. 194-201).  She reported as follows: She lived in a rooming house with her children.  (R. 194).  She would cook, clean, do the laundry, take care of her children, and watch television.  (*Id.*).  When Plaintiff's depression was at its worst, her personal care would suffer, and she would not get dressed, shower, or generally take care of herself.  (R. 195).  Medication helped her concentration and motivation.  (R. 195-196).  She would not go out very often or drive because of her anxiety.  (R. 196).  She was taking Lithium, Seroquel, Lamotrigine, and Citalopram.  (R. 197).  She was able to prepare meals for herself and her children every day.  (*Id.*).  She could

---

[1]  Although Plaintiff's attorney argued that attention deficit disorder and illiteracy were severe impairments, the ALJ found that there was no medical evidence in the record to support these conditions.  Plaintiff has not challenged this finding.

handle her finances on her own.  (R. 198).  Plaintiff would spend time with her sister and go to

church.  (R. 196).  Her medication helped to curb her aggression and helped her better deal with

people.  (R. 199).  Plaintiff's conditions affected her ability to talk to people and to get along

with others, and sometimes affected her memory, understanding, and concentration.  (*Id.*).

Finally, Plaintiff noted the following: "I wasn't doing well on my old meds but now that I'm on

new ones I'm a little bit more focuse[d] I have [a] hard day but everything is trying to get better

as long as I stay on my medication."  (R. 200).

<u>Plaintiff's Medical Records</u>

Plaintiff presented at Bridgeport Hospital on May 4, 2010 with anxiety, depression, and

sleeping problems.  (R. 598).  On October 6, 2010, Plaintiff was diagnosed with depression and

insomnia.  (R. 243).

Plaintiff was at the department of psychiatry at Bridgeport Hospital on March 28, 2011

for an intake.  (R. 282-293).  She had been referred to the psychiatry program by a criminal court

because she had not been taking her medication and had been getting out of control.  (R. 283,

518, 524).  She was noted as taking Ambien, Trazadone, Celexa, and Citalopram.  (R. 285, 520).

She had slow speech, was angry and sad, had a flat affect, and was oriented times three.  (R.

286).  Dr. Dorothy Zachmann opined that Plaintiff had bipolar disorder, was depressed, and had

a global assessment of functioning ("GAF")[2] score of 35.  (R. 293).  Following this session,

_____

[2] GAF scores are representative of a patient's overall level of functioning.  *See Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, American Psychiatric Association, 1994 pp. 30-32.  A GAF score of 21-30 is indicative of behavior that is considerably influenced by delusions or hallucinations, or serious impairments in communication or judgment.  *Id.*, p. 32.  A GAF score of 31-40 is indicative of some impairment in reality testing or communication, or major impairments in several areas.  *Id.*  A GAF score of 41-50 is indicative of serious symptoms or serious difficulty in social, occupational, or school functioning.  *Id.*  A GAF score of 51-60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *See id.*, p. 32.

Plaintiff's Citalopram dosage was decreased, her Ambien and Trazadone were discontinued, and she was started on LiCO3.  (R. 521).

On April 6, 2011, Plaintiff's Seroquel dosage was reduced.  (R. 521).  On April 20, 2011, her Lamictal dosage was increased.  (*Id.*).  The Lamictal dosage was again increased on May 4, 2011, along with an increase in Seroquel dosage.  (R. 521).

On June 2, 2011, Plaintiff's Lamictal dosage was increased to 200mg.  (R. 508).  Plaintiff told Dr. Dorothy Zachmann that, "I have problems but I am calm."  (R. 510).  On July 27, 2011, Plaintiff's Lamictal dosage was reduced to 100mg, and her Seroquel dosage was increased to 150 mg.  (R. 508).  Dr. Zachmann noted Plaintiff's complaints of stress and interrupted sleep, but also indicated that Plaintiff was "looking great."  (R. 510).  On September 27, 2011, Plaintiff's dosage of Citalopram was increased.  (R. 508).  Plaintiff reported to Dr. Zachmann that she was stressed out following the death of her sister.  (R. 510).  On November 23, 2011, Plaintiff told Dr. Zachmann that, "I am doing OK."  (R. 511).  Dr. Zachmann noted that Plaintiff was sleeping better, and overall had better control with her current medication.  (*Id.*).

On January 18, 2012, Plaintiff's Seroquel dosage was increased to one and a half per day.  (R. 509).  She indicated that she felt better since increasing the Seroquel dosage, but that she was still stressed and at times overwhelmed.  (R. 511).

## Medical Opinions

On June 2, 2011, Dr. Zachmann opined that Plaintiff "has a diagnosis of Bipolar Dis[order] with psychotic [symptoms] [and] is very vulnerable [and] unable to sustain gainful employment."  (R. 533).

Dr. Zachmann completed a medical report on July 27, 2011.  (R. 294-97).  Plaintiff was taking Lamotrigine, Seroquel, Citalopram, and LiCO3.  (R. 294).  Her cognitive status was

oriented times three, with a fair memory, and she was distractible and anxious.  (*Id.*).  Plaintiff denied any hallucinations, racing thoughts, or delusions.  (R. 295).  While Plaintiff was easily anxious and overwhelmed, her mood was better on her current medications.  (*Id.*).

In the area of activities of daily living, Dr. Zachmann opined that Plaintiff had slight problems with taking care of her personal hygiene, caring for her physical needs, and using good judgment with regards to safety and dangerous circumstances.  (R. 295).  Dr. Zachmann further reported that Plaintiff had serious problems with using appropriate coping skills to meet ordinary demands of a work environment and with handling frustration appropriately.  (*Id.*).  In the area of social interactions, Dr. Zachmann opined that Plaintiff had slight problems with interacting appropriately with others in a work environment; asking questions or requesting assistance; respecting/responding appropriately to others in authority; and with getting along with others without distracting them or exhibiting behavioral extremes.  (R. 296).  In the area of task performance, Dr. Zachmann opined that Plaintiff had a slight problem with carrying out single-step instructions, obvious or serious problems with carrying out multi-step instructions, a serious problem with focusing long enough to finish assigned simple activities or tasks, an obvious problem with changing from one simple task to another, and serious or very serious problems with performing basic work activities at a reasonable pace and on a sustained basis.  (*Id.*).

On August 1, 2011, Dr. Kenneth Bangs performed a mental residual functional capacity ("RFC") assessment, based on a review of Plaintiff's medical records, for the initial disability determination.  (R. 80-89).  Dr. Bangs diagnosed Plaintiff with "[b]ipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)," and substance addiction disorder.  (R. 84).  He found that she had mild restrictions of ADL, moderate

difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation.  (*Id.*).  He noted that Plaintiff's credibility was limited by her adequate ADL's and the evidence of record not supporting the level of limitations at which Plaintiff claimed to be suffering.  (R. 85).

As to sustained concentration and persistence limitations, Dr. Bangs found that Plaintiff was moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; and complete a normal workday without psychological interruptions. (R. 86).  He also found that she could handle simple instructions, sustain an ordinary routine and schedule, and make simple decisions.  (*Id.*).  With regard to social interactions, Dr. Bangs found that Plaintiff was moderately limited in her ability to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (R. 87).  He opined that she had no problems with her asking simple questions, accepting instructions and criticisms, and with maintaining socially appropriate behavior.  (*Id.*).  As to adaptation limitations, Dr. Bangs found Plaintiff to be moderately limited in her ability to respond appropriately to changes in the work setting and in her ability to set realistic goals or make plans independently of others.  (*Id.*).  He found no problems with her awareness of normal hazards, traveling in unfamiliar places, and with her use of public transportation.  (*Id.*).  Finally, he limited Plaintiff to unskilled work across all exertional levels and found her to be not disabled.  (R. 88).

Dr. Thomas Hill performed a mental residual functional capacity ("RFC") assessment on September 28, 2011.  (R. 90-98).  Along with bipolar syndrome and substance addiction, he found that Plaintiff had depressive syndrome and manic syndrome.  (R. 93).   The remainder of

Dr. Hill's opinion was consistent with that of Dr. Bangs, except that he found that Plaintiff did not have a limitation with regard to her ability to get along with coworkers without distracting them or exhibiting behavioral extremes and with her ability to respond appropriately to changes in the work setting.  (R. 96).

Dr. Zachmann completed a mental RFC assessment on March 28, 2012.  (R. 623-625). In the area of understanding and memory, she opined that Plaintiff was moderately limited in her ability to remember locations and work-like procedures, not limited in her ability to understand and remember simple instructions, and was markedly limited in her ability to understand and remember detailed instructions.  (R. 623).  In the area of sustained concentration and persistence, Plaintiff was moderately limited in her abilities to carry out short and simple instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; and in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms.  (R. 623-624).  Dr. Zachmann opined that Plaintiff had marked limitations in her abilities to sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; and to make simple work-related decisions. (R. 623).  As to Plaintiff's social interactions, Dr. Zachmann found that Plaintiff was moderately limited in her abilities to interact appropriately with the general public; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and in her ability to maintain socially appropriate behavior.  (R. 624).  In the area of adaptation, Dr. Zachmann opined that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting and in her ability to be aware of normal hazards and take appropriate precautions.  (*Id.*).  Dr. Zachmann found Plaintiff was markedly

limited in her ability to travel in unfamiliar places or use public transportation, and in her ability to set realistic goals or make plans independently of others. (*Id.*).

<u>Standard of Review</u>

To be considered disabled under the Social Security Act, Plaintiff must demonstrate that she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A),1382c(a)(3)(A). Such impairment or impairments must be severe such that the claimant cannot engage in any substantial gainful work which exists in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

This Court's review of the Commissioner's decision is limited. The decision "may be set aside only due to legal error or if it is not supported by substantial evidence." *Crossman v. Astrue*, 783 F. Supp. 2d 300, 302-03 (D. Conn. 2010) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is less than a preponderance of the evidence, but "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is that amount of evidence that a "reasonable mind might accept as adequate to support a conclusion." *Id.* "Thus, as a general matter, the reviewing court is limited to a fairly deferential standard." *Crossman*, 783 F. Supp. 2d at 303 (quoting *Gonzalez v. Comm'r*, 360 F. App'x 240, 242 (2d Cir. 2010) (summary order)).

<u>Discussion</u>

**A. Whether the ALJ Committed Factual Errors or Misstatements that Require Remand**

Plaintiff argues that the ALJ made factual errors or misstatements that require remand. Specifically, she asserts that the ALJ erred by stating that Plaintiff performs activities of daily living and points to some evidence in the record that indicates that she is unable to perform daily

living activities.  (R. 628, 513, 516, 195, 196).  There is other evidence in the record, however,
indicating Plaintiff *is* able to perform certain activities of daily living.  For example, Plaintiff
reported that she was able to cook, clean, do laundry, and care for her children.  (R. 194).
Plaintiff also stated that she would bake and watch television.  (R. 198.)  The State Agency
medical consultants, Dr. Bangs and Dr. Hill, both opined that Plaintiff had only mild limitations
in her daily living activities.  This evidence represents substantial evidence that supports the
ALJ's conclusion.  *Richardson*, 402 U.S. 389, 401 (1971).  There is, at most, a dispute in the
record as to Plaintiff's ability to perform activities of daily living.  The ALJ properly resolved
this dispute, as he was required to do.  *See Richardson*, 402 U.S. at 399 (holding that when there
is a conflict in the medical evidence, "[t]he trier of fact has the duty to resolve that conflict.");
*see also, Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), *cert. denied*, 133 S. Ct.
2881 (2013) ("[W]e defer to the Commissioner's resolution of conflicting evidence.").  As such,
there was no error when the ALJ stated that Plaintiff performs activities of daily living.

Plaintiff also argues that the ALJ erred by stating that there is no evidence in the record
that contradicts the findings of the State Agency medical consultants, Dr. Bangs and Dr. Hill.
Her argument is primarily that the opinion of Dr. Zachmann contradicts these opinions.  As this
argument is more easily understood in the context of the treating source rule, the Court will
consider it in that context.  *See infra* at p. 14.

**B.  Whether Plaintiff Met the Standard for a Listed Impairment**

Plaintiff next argues that her bipolar disorder meets the requirements of impairment 12.04
of 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who meets or equals a Listing is
"conclusively presumed to be disabled and entitled to benefits." *Dixon v. Shalala,* 54 F.3d 1019,
1022 (2d Cir.1995); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an

impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").   The claimant bears the burden of proof at step three to show that her impairments meet or medically equal a listing.  *Johnson v. Astrue*, 748 F. Supp. 2d, 160 (N.D.N.Y. 2010).  To show that an impairment meets a listing, a claimant must show that the impairment satisfies all of the specified medical criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Plaintiff focuses her argument on the Part B requirements of section 12.04.[3]  In order to meet the Part B requirements, an individual must show that he or she has at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.04(B).  Here, the ALJ found that Plaintiff had mild restrictions in her activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation.  (R. 27). Substantial evidence supports this finding.

Plaintiff is only mildly restricted in her activities of daily living.  Activities of daily living "include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(1).  The ALJ found that Plaintiff is able to care for her personal needs, prepare meals, do dishes, make the bed, dust and clean, do laundry, and go grocery shopping.  (R. 27).  Further, he found that Plaintiff is able to care for her children.  (*Id.*).  The ALJ's findings are supported by the opinions of Dr. Bangs and Dr. Hill, who both found that Plaintiff was only mildly limited in

---

[3] The parties agree that Plaintiff's bipolar disorder satisfies the Part A requirement.

her activities of daily living.  (R. 84, 94).  This represents more than a "mere scintilla" of evidence, as it covers much of the identified elements in the regulation.  *Richardson*, 402 U.S. at 401.  Although there is evidence in the record that supports a higher limitation, it is mostly based on the opinion of Dr. Zachmann.  The ALJ gave limited weight to the opinions of Dr. Zachmann, and the Court addresses this in its discussion of the treating source rule.  *Infra*. at p. 14.  Further, Dr. Zachmann opined that Plaintiff only had a slight problem in three of the five ADL areas, and serious, as opposed to very serious, problems in the other two.  (R. 628).  This represents a conflict in the evidence that the ALJ was entitled to resolve.  *Richardson*, 402 U.S. at 399.

Plaintiff has no more than moderate difficulties in social functioning.  "Social functioning" refers to the claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals," including "the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(2).  The ALJ found that despite Plaintiff's difficulty being around others, she is able to care for her children, have contact with her sister, and attend church.  (R. 27).  As Plaintiff points out in her brief, she has problems with paranoia and with interacting with others.   (R. 46).  She has been fired for her attitude and can display anger and aggression.  (R. 290, 527).  However, she has also maintained a relationship with her children, sister, and her church.  (R. 51, 199).  She has stated that she interacts better with people when she takes her medications.  (R. 199, 200).  Following her hospitalization in March of 2011, Plaintiff generally indicated that she was doing better with medication.  (R. 510, 511).  The opinions of the State Agency medical consultants also support the ALJ's finding that Plaintiff is only moderately impaired in her social functioning.  (R. 84, 94).  Dr. Zachmann opined that Plaintiff had only slight problems across all the areas of social interaction on July 27,

2011, and opined that Plaintiff was moderately impaired, as opposed to markedly impaired, with regard to her social interactions on March 28, 2012.  (R. 624, 629).  This is entirely supportive of the ALJ's finding that Plaintiff had only moderate difficulties in social functioning, and together with the rest of the evidence in the record, represents substantial evidence.

Plaintiff at most has moderate difficulties with regard to her abilities of concentration, persistence, or pace.  The domain of maintaining concentration, persistence, or pace, "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(3).  The ALJ noted that while Plaintiff has difficulty focusing and concentrating, she was able to handle her finances, pay her bills, and care for her children.  (R. 27).  Treating sources have described her concentration as poor.  (R. 292, 515).  She was diagnosed with attention deficit disorder while in school.  (R. 530).  Dr. Zachmann opined that Plaintiff had obvious, serious and very serious problems on July 27, 2011, and moderate and marked restrictions in this area on March 28, 2012.  (R. 629, 623-624).  However, the limited weight the ALJ gave to Dr. Zachmann's opinion is covered in the Court's analysis of the treating source rule. *Infra* at p. 14.  The ALJ's finding is supported by Dr. Bangs and Dr. Hill.  (R. 84, 94).  Plaintiff has herself stated that she is able to attend appointments, go grocery shopping, pay bills, count change, handle a savings account, and use a checkbook.  (R. 196, 198).  She has also stated that she only "sometimes" has concentration problems.  (R. 199).  This once again represents a conflict in the record that the ALJ was entitled to resolve.  *Richardson*, 402 U.S. at 401.  Based on the evidence, and the record as a whole, there is more than a "mere scintilla" of evidence that supports the ALJ's findings at step three that Plaintiff does not meet a Listing.  *Id.*

### C.  Whether the ALJ Complied with the Treating Source Rule

Invoking what is commonly referred to as the "treating physician rule" or "treating source rule," Plaintiff argues that the ALJ failed to afford adequate weight to the opinion of Dr. Zachmann.  Under the "treating physician rule," a treating physician's opinion on the issues of the nature and severity of a claimant's impairments is given "controlling weight" if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record.  *See* 20 C.F.R. § 416.927(c)(2); *see also, Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003), *superseded by regulation on other grounds*, 20 C.F.R. § 404.1560(c)(2).  The opinion of a treating source is accorded extra weight because of the continuity of the treatment that he or she provides, and the doctor-patient relationship, which places him or her in a unique position to make a complete and accurate diagnosis of the patient.  *Mongeur v. Heckler,* 722 F.2d 1033, 1039 n. 2 (2d Cir. 1983).  However, the opinion of a treating source will not be afforded controlling weight if that opinion is not consistent with other substantial evidence in the record, including the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 416.927(c)(2).   Finally, even when a treating physician's opinion is not given "controlling" weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive.  *Halloran*, 362 F.3d at 32.

These factors include the length of the treatment relationship; the nature and extent of the treatment relationship; the supportability of the treating physician's opinion particularly by medical signs and laboratory findings; consistency with the record as a whole; the physician's area of specialty; and other factors brought to the attention of the Social Security Administration that tend to support or contradict the opinion.  *Id.*; 20 C.F.R. § 416.927(c)(2).  After considering

these factors, the ALJ must comprehensively set forth the reasons for the weight assigned to a treating physician's opinion. SSR 96-2p, 1996 WL 374188, at *5 (July 5, 1996).  Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.  *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Plaintiff here argues that the ALJ erred by assigning the opinions of Dr. Zachmann "diminished evidentiary weight" because they were "conclusory."  First, as to Dr. Zachmann's opinion that Plaintiff is "very vulnerable and unable to sustain gainful employment" (R. 533), this is an opinion as to whether Plaintiff is disabled –  an opinion on an issue reserved for the Commissioner – and, as the ALJ accurately noted, is not entitled to any special significance.  *See Snell*, 177 F.3d at 133 ("A treating physician's statement that a claimant is disabled cannot itself be determinative, although the ALJ must still address it in the hearing decision."); SSR 96-5p (treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance).

Plaintiff cites to a number of pages in the record which she argues support Dr. Zachmann's opinion.  The majority of these citations, however, are from Plaintiff's hospitalization on March 28, 2011.  (R. 284, 286, 288, 290-292, 515, 516, 519, 524, 526, 527, 530, 532).  While Plaintiff displayed a high level of symptomology at this time, she was at the hospital after not taking her medications.  (R. 518, 524).  Unsurprisingly, treatment records after her hospitalization reveal that when she was taking medication her functioning improved.  On June 2, 2011, Plaintiff told Dr. Dorothy Zachmann that, "I have problems but I am calm."  (R. 510).  On her June 18, 2011 ADL form, Plaintiff indicated she was doing better with her medication.  (R. 199, 200).  Dr. Zachmann noted Plaintiff's complaints of stress and interrupted

sleep on July 27, 2011, but also indicated that Plaintiff was "looking great."  (R. 510).  On

November 23, 2011, Plaintiff told Dr. Zachmann that, "I am doing OK."  (R. 511).  Dr.

Zachmann noted that Plaintiff was sleeping better, and overall had better control with her current

medication.  (*Id.*)  Dr. Zachmann indicated that Plaintiff had felt better since increasing the

Seroquel dosage on January 18, 2012, but also indicated that she was still stressed and at times

overwhelmed.  (R. 511).  Mental examinations at Bridgeport Hospital have also shown normal

mental status findings, full orientation to time, place, and person, and normal memory, mood,

and affect.  (R. 441-442, 445, 448, 475, 478, 489, 498, 543, 562, 574, 605, 614, 619).

  The evidence cited above is not fully supportive of Dr. Zachmann's opinion.  Along with

that evidence, the opinions of Dr. Bangs and Dr. Hill counter Dr. Zachmann's opinion.  As such,

Dr. Zachmann's opinion was not entitled to controlling weight.  *See Halloran*, 362 F.3d at 32; 20

C.F.R. § 416.927(c)(2) (the opinion of a treating source will not be afforded controlling weight if

that opinion is not consistent with other substantial evidence in the record, including the opinions

of other medical experts).

  Plaintiff also argues that the ALJ erred by not considering the factors laid out in 20 CFR

§ 416.927(c)(2) while assessing Dr. Zachmann's opinion.  While the ALJ did not specifically

mention Dr. Zachmann's specialty, he considered, and cited to, Dr. Zachmann's treatment

records.  (R. 29-30).  He noted the opinions' lack of support from medical signs and laboratory

findings, and their inconsistency with the record as a whole. (*Id.*)  Although the ALJ did not

specifically address each factor, in *Atwater v. Astrue*, the Second Circuit rejected the argument

that an ALJ must explicitly review each factor provided for in 20 C.F.R. §404.1527(c), finding

"[w]e require no such slavish recitation of each and every factor where the ALJ's reasoning and

adherence to the regulation are clear."  512 F. App'x at 70; *see Halloran*, 362 F.3d at 31-32 (per

16

curiam)(affirming ALJ opinion which did "not expressly acknowledge the treating physician rule," but where "the substance of the treating physician rule was not traversed."); *see, also, Khan v. Astrue*, No. 11-CV-5118(MKB), 2013 WL 3938242, at *15 (E.D.N.Y. July 30, 2013) (internal citation omitted) ("The regulations require that the ALJ set forth the reasons for the weight he or she assigns to the treating physician's opinion.  The ALJ is not required to explicitly discuss the factors, but it must be clear from the decision that the proper analysis was undertaken.").  Based on the evidence of record, it is clear hear that "the substance of the treating physician rule was not traversed."  *Halloran*, 362 F.3d at 31-32.  Therefore, there was no error.

### D.  Whether Substantial Evidence Supports the ALJ's Credibility Determination

Fourth, Plaintiff argues that the ALJ erred in assessing her credibility.  The courts of the Second Circuit follow a two-step process for credibility determinations. The ALJ must first determine whether the record demonstrates that the claimant possesses a medically determinable impairment that could reasonably produce the alleged symptoms.  20 C.F.R. § 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

Second, the ALJ must assess the credibility of the claimant's subjective complaints regarding the intensity of the symptoms. The ALJ is first required to determine if objective evidence alone supports the claimant's complaints; then, if the evidence does not support the

claims, the ALJ must consider other factors laid out at 20 C.F.R. §416.929(c). *See, e.g., Skillman v. Astrue*, No. 08-CV-6481, 2010 WL 2541279, at *6 (W.D.N.Y. June 18, 2010).  These factors include activities of daily living, medications, and the claimant's response thereto, treatment other than medication and its efficacy, and other relevant factors concerning limitations.  20 C.F.R. § 416.929(c)(3).  The ALJ must consider all the evidence in the case record.  SSR 96-7p, 1996 WL 374186, at *5.  Furthermore, the credibility finding "must contain specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4.

In working through the two step process, the Second Circuit has indicated that it is the Commissioner, not the reviewing court, who evaluates the credibility of all witnesses, including the plaintiff.  *Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983).  Importantly, "[c]redibility findings of an ALJ are entitled to great deference and . . . can be reversed only if they are 'patently unreasonable.'" *Pietrunti v. Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 119 F. 3d 1035, 1042 (2d Cir. 1997) (citation omitted).

Plaintiff first argues that the ALJ misstated her activities of daily living because there was no evidence to support the finding that Plaintiff could bake, go to church, and go to her children's school.  (R. 29).  This argument is unavailing.  Plaintiff herself has indicated, in an ADL form, that she baked daily, participated in church groups, and walked her children to and from school daily.  (R. 199).  Plaintiff also argues that Dr. Zachmann's opinion supports her claims that she has very poor personal hygiene.  Dr. Zachmann, however, opined that Plaintiff had only slight problems with taking care of her personal hygiene and caring for her physical needs.  (R. 628).  This directly contradicts Plaintiff's claims of much more limited abilities in

18

caring for her personal hygiene.  In fact, Plaintiff herself has reported that when she takes her medication her personal hygiene was improved.  (R. 195).  Plaintiff's statements on this point, combined with Dr. Zachmann's opinion, support the ALJ's findings.

The ALJ concluded that the first step of the SSR 96-7p analysis was satisfied because "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 29).  Next, the ALJ continued on to the second step of the SSR 96-7p analysis, concluding that the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely plausible to the extent alleged." (*Id.*).  Plaintiff's primary argument is that the ALJ's credibility finding was not specific enough.  Although the ALJ used the familiar boilerplate language for credibility determinations, he went on to address Plaintiff's abilities to perform daily activities.  (R. 29).  He also noted the lack of support from objective medical evidence as to the severity of Plaintiff's symptoms.  (*Id.*).   As discussed above, the Court has found that Plaintiff's functioning was improved with medication. *Supra* at p. 15-16; (R. 510-511).  The opinions of Dr. Bangs and Dr. Hill are also inconsistent with Plaintiff's alleged limitations.  (R. 80-89, 90-98).  Based on this evidence, it was not "patently unreasonable" for the ALJ to determine that Plaintiff's complaints of total disability were not fully credible.  *Pietrunti*, 119 F. 3d at 1042.  As such, there was no error.

### E.  Whether the ALJ was Required to Call a Vocational Expert at Step Five

Finally, Plaintiff argues that the Commissioner erred by not calling a vocational expert in this case. At step five of the analysis, the burden shifts to the Commissioner to demonstrate that there are a substantial number of jobs available in the national economy for Plaintiff to perform. *Balsamo v. Chater,* 142 F.3d 75, 80 (2d Cir.1998).  The Commissioner will utilize the Medical Vocational Guidelines, or "grids," found at 20 C.F.R. Part 404, Subpart P, Appendix 2 to make

this determination.  *Pratts v. Chater,* 94 F.3d 34, 38–39 (2d Cir.1996).  However, "if a claimant

has nonexertional impairments which 'significantly limit the range of work permitted by his

exertional limitations,' then the Commissioner cannot rely upon the grids, and instead 'must

introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the

economy which claimant can obtain or perform.'" *Griffith v. Astrue,* No. 08–cv–6004, 2009 WL

909630, at *4 (W.D.N.Y. Mar. 31, 2009) (quoting *Pratts,* 94 F.3d at 39).  Here, the ALJ decided

that Plaintiff was "not disabled" based on section 204.00 of the grids, noting that Plaintiff's

nonexertional limitations had "little or no effect on the occupational base of unskilled work at all

exertional levels."  (R. 31).

      The Second Circuit has held that vocational expert testimony is not required when a

claimant's nonexertional impairments do not significantly diminish his or her ability to work.

*Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).  The ALJ found that Plaintiff could "perform

work at all exertional levels involving simple, routine repetitive work with one or two-step

instruction; involving only occasional interaction with the public, co-workers and supervisors."

(R. 28).  SSR 85-15 (S.S.A. 1985) indicates that:

> [t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

The ALJ's RFC determination is in accord with this description of unskilled work.  Although the

ALJ limited Plaintiff in her interactions with others, SSR 85-15 indicates that unskilled work

typically involves "dealing primarily with objects, rather than with data or people . . . ."  SSR 85-

15.  As such, even though Plaintiff is limited in her social interactions, she would not be

*substantially* limited in performing unskilled work.  In addition, Dr. Zachmann found that

Plaintiff only has slight or moderate problems with simple tasks.  (R. 623, 629).  Therefore, there was no error when the ALJ used the grids, rather than calling a vocational expert, to find that Plaintiff was not disabled.

<u>Conclusion</u>

After a thorough review of the administrative record, the Court finds that Plaintiff's Motion for Order Reversing the Decision of the Commissioner [Doc. # 17] should be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner [Doc. # 18] should be GRANTED.

This is a Recommended Ruling.  *See* Fed. R. Civ. P. 72(b)(1).  Any objection to this Recommended Ruling must be filed within 14 days after service.  *See* Fed. R. Civ. P. 72(b)(2). In accordance with the Standing Order of Referral for Appeals of Social Security Administration Decisions dated September 30, 2011, the Clerk is directed to transfer this case to a District Judge for review of the Recommended Ruling and any objections thereto, and acceptance, rejection, or modification of the Recommended Ruling in whole or in part.  *See* Fed. R. Civ. P. 72(b)(3) and D. Conn. Local  Rule 72.1(C)(1) for Magistrate Judges.

SO ORDERED, this _____2nd_____ day of June, 2015, at Bridgeport, Connecticut.

_____/s/ *William I. Garfinkel*_____
WILLIAM I. GARFINKEL
United States Magistrate Judge